UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 6:22-cr-116-WWB-EJK
   18 U.S.C. § 1349
MARIA DEL CARMEN MONTES  18 U.S.C. § 1344
CARLOS FERRER  18 U.S.C. § 1028A

### INDICTMENT

The Grand Jury charges:


SEALED

**COUNT ONE**
**(Conspiracy - 18 U.S.C. § 1349)**

**A. Introduction**

At times material to this Indictment:

1. Mortgage Company 1 was a financial institution as defined by the Fraud Enforcement and Recovery Act of 2009, that is, an organization that financed and refinanced debt secured by an interest in real estate and with activities that affected interstate and foreign commerce. Mortgage Company 1 had offices in the Middle District of Florida and elsewhere.

2. It was the practice of many lending institutions, including Mortgage Company 1, to make loans secured by real property to borrowers or to refinance existing loans secured by real property. Such loans were typically called mortgages or mortgage loans. In determining whether to extend any

such loan, it was the practice of Mortgage Company 1 to rely upon the information contained in a borrower's mortgage-related documents, such as Form 1003, Uniform Residential Loan Application (referred to herein as the "loan application"), documents submitted in support of the statements made on the loan application, the Closing Disclosure, and the mortgage itself.

3. The loan application and supporting documentation were relied on by mortgage lenders in the mortgage loan approval process. The loan application required the borrower to truthfully provide the mortgage lender with various types of information, including the borrower's place of employment, gross monthly income, source of closing costs and down payment, intended use of the property (such as investment or secondary residence), and the specific details of the anticipated real estate transaction.

4. When Mortgage Company 1 received a loan application, this typically triggered what was known in the mortgage industry as the "underwriting process." The primary purpose of the underwriting process was to determine the ability of the borrower to repay the mortgage loan being requested. During the underwriting process, Mortgage Company 1 considered a variety of factors in determining whether to issue a mortgage loan, including the borrower's employment, length of employment, sources of income, assets, and liabilities. Mortgage Company 1 considered the amount and source of a

2

borrower's gross income and length of employment to be important factors in assessing the borrower's financial health and determining the borrower's ability to repay the mortgage loan.

5. A Verification of Employment (hereinafter "VOE") was a form used by Mortgage Company 1 and other lenders to verify the employer, length of employment, and salary information of a borrower seeking a mortgage loan.

6. Defendant **MARIA DEL CARMEN MONTES** (hereinafter **"MONTES"**) was a resident of the Middle District of Florida who held a Florida real estate broker's license.

7. Defendant **CARLOS FERRER** (hereinafter **"FERRER"**) was a resident of the Middle District of Florida.

8. Great Start Credit, LLC (hereinafter "Great Start Credit") was a Florida limited liability company. **FERRER** was the sole managing member and registered agent of Great Start Credit.

9. Transportation Company 1 was a Florida for-profit corporation with offices in the Middle District of Florida.

10. Co-conspirator 1 was a resident of the Middle District of Florida employed by Transportation Company 1.

3

11. A "means of identification," was any name or number that could be used, alone or in conjunction with any other information, to identify a specific individual, including any name, signature, social security number, date of birth, official State or government issued driver's license or identification number, any unique electronic identification number, address or routing code, or any access device.

### B. The Conspiracy

12. Beginning at least as early as in or about August 2017, and continuing through at least in or about March 2021, in the Middle District of Florida, and elsewhere, the defendants,

**MARIA DEL CARMEN MONTES**
and
**CARLOS FERRER,**

did willfully and knowingly combine, conspire, confederate and agree with each other, co-conspirator 1, and with others known and unknown to the Grand Jury, to knowingly, and with intent to defraud, execute a scheme and artifice to defraud one or more financial institutions, which scheme and artifice employed material falsehoods and omissions, and to knowingly, and with intent to defraud, execute a scheme and artifice to obtain moneys, funds, credits, assets, and other property owned by, and under the custody and control of, one or more financial institutions, by means of false and fraudulent

pretenses, representations, promises and omissions relating to a material fact, in violation of 18 U.S.C. § 1344.

### C. Manner and Means of the Conspiracy

13. The manner and means by which the defendants and other co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

   a. It was part of the conspiracy that **MONTES** would and did receive referrals for and solicit buyers interested in purchasing residential real estate.

   b. It was a further part of the conspiracy that **MONTES** would and did create and cause to be created false and fictitious paystubs and other documents for the buyers in the name of Transportation Company 1 and other companies using the buyers' means of identification to deceive Mortgage Company 1 into approving mortgage loans.

   c. It was a further part of the conspiracy that **MONTES** would and did recruit co-conspirator 1 at Transportation Company 1 and would and did instruct co-conspirator 1 to sign and return false pre-filled VOEs and provide false verbal VOEs to Mortgage Company 1 in the names of the buyers that **MONTES** represented.

5

d. It was a further part of the conspiracy that after receiving VOE forms from Mortgage Company 1, co-conspirator 1 would and did send the VOE forms via email to **MONTES** and/or **FERRER**.

e. It was a further part of the conspiracy that after receiving the VOE forms from co-conspirator 1, **MONTES** and/or **FERRER** would and did insert the false and fraudulent Transportation Company 1 employment and income information on the VOEs for purported employees who never worked there and then would and did send the completed VOEs to co-conspirator 1 via email for her signature.

f. It was a further part of the conspiracy that co-conspirator 1 would and did sign the completed VOEs she received from **MONTES** and/or **FERRER** for purported employees of Transportation Company 1 and submitted them via email to Mortgage Company 1, when in fact, as co-conspirator 1 then knew, the purported employees had never worked for Transportation Company 1.

g. It was a further part of the conspiracy that **FERRER** would and did complete and submit and cause to be submitted to Mortgage Company 1, VOEs in the names of purported employees of Great Start Credit and other companies he controlled, when in fact, as **FERRER** then knew, the purported employees never had worked for these entities.

6

h. It was further part of the conspiracy that co-conspirator 1 would and did verbally provide false and fraudulent employment and income information to Mortgage Company 1 for buyers represented by **MONTES** seeking mortgage loans from Mortgage Company 1.

i. It was a further part of the conspiracy that, to deceive Mortgage Company 1, **MONTES** and/or **FERRER** would and did submit and cause to be submitted the false and fictitious paystubs and other false and fictitious documents containing the buyers' means of identification in support of the mortgage loan applications, which would and did result in Mortgage Company 1 issuing funds for the benefit of the buyers for the purchase of the properties.

j. It was further part of the conspiracy that **MONTES** would and did obtain commissions for the real estate purchases that Mortgage Company 1 funded for these buyers.

k. It was further part of the conspiracy that **MONTES** often would and did collect cash payments from the buyers, in addition to her real estate commissions, that were not disclosed to Mortgage Company 1.

l. It was a further part of the conspiracy that **MONTES** and **FERRER** would and did perform acts and make statements to hide and

7

conceal, and cause to be hidden and concealed, the object and purposes of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1349.

## COUNTS TWO THROUGH FIVE
(Bank Fraud – 18 U.S.C. § 1344)

### A. Introduction

1. The allegations contained in in Part A of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### B. The Scheme to Defraud

2. Beginning at least as early as in or about August 2017, and continuing through at least in or about March 2021, in the Middle District of Florida, and elsewhere, the defendants,

MARIA DEL CARMEN MONTES
and
CARLOS FERRER,

and others, both known and unknown to the Grand Jury, did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud a financial institution, as defined in 18 U.S.C. § 20, and to obtain money, funds, credits, assets, and other property owned by, and under the custody and

control of, the financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means

3. The substance of the scheme and artifice is set forth in Part C of Count One of this Indictment, "Manner and Means of the Conspiracy," the allegations of which are realleged and incorporated by reference as if fully set forth herein.

### D. Execution of the Scheme

4. On or about the dates set forth below in each Count, in the Middle District of Florida, and elsewhere, the defendants,

**MARIA DEL CARMAN MONTES**
and
**CARLOS FERRER,**

aided and abetted by others, and for the purpose of knowingly, willfully, and with intent to defraud executing, and attempting to execute, the aforementioned scheme and artifice to defraud Mortgage Company 1, a financial institution as defined in 18 U.S.C. § 20, and to obtain money, funds, credits, assets, and other property owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, did cause the following transfers of mortgage loan funds to be made by Mortgage Company 1:

| Count | Defendant(s) | Loan Closing Date | Approximate Loan Amount | Property |
|---|---|---|---|---|
| TWO | MONTES FERRER | 11-6-2020 | $287.409.00 | 3xx1 Lakes Crest Ave., St. Cloud, FL |
| THREE | MONTES | 9-21-2020 | $346,750.00 | 1xx2 Golf View Estates Dr., Orange City, FL |
| FOUR | MONTES FERRER | 10-16-2020 | $230,743.00 | 2xx5 Apaloosa Trail, Deltona, FL |
| FIVE | MONTES FERRER | 12-18-2020 | $255,290.00 | 8xx2 Wingfoot Road, Champions Gate, FL |

All in violation of 18 U.S.C. §§ 1344 and 2.

## COUNT SIX
### (Aggravated Identity Theft)

1. The allegations contained in Sections A and C of Count One of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2. On or about December 1, 2020, in the Middle District of Florida and elsewhere, the defendant,

**MARIA DEL CARMAN MONTES,**

did knowingly possess, transfer, and use, without lawful authority, a means of identification of another person, specifically, the name and social security number of A.R., during and in relation to the felony offense of bank fraud, in

10

violation of 18 U.S.C. § 1344, as charged in Count Five of this Indictment, knowing that such means of identification belonged to an actual person.

In violation of 18 U.S.C. §§ 1028A and 2.

## FORFEITURES

1. The allegations contained in Counts One through Five are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(2)(A).

2. Upon conviction of violations of 18 U.S.C. §§ 1344 and/or 1349, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

3. If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1).

A TRUE BILL,

ROGER B. HANDBERG
United States Attorney

By: _____
Christopher Poor
Special Assistant United States Attorney

By: _____
Chauncey Bratt
Assistant United States Attorney
Deputy Chief, Orlando Division

FORM OBD-34  
July 22

No. 2021R00772

# UNITED STATES DISTRICT COURT
Middle District of Florida  
Orlando Division

THE UNITED STATES OF AMERICA

vs.

MARIA DEL CARMEN MONTES AND CARLOS FERRER

## INDICTMENT

Violations: 18 U.S.C. § 1349  
18 U.S.C. § 1344  
18 U.S.C. § 1028A

A true bill,

~~[signature redacted]~~

Filed in open court this 20th day of July 2022.

_____  
Clerk

Bail $_____

GPO 863 525